## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**BRANDI A. HORN**                                              **PLAINTIFF**

**V.**                          **NO. 3:23CV00205-BSM-PSH**

**MARTIN O'MALLEY,**
**COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**                    **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.    Introduction:**

Plaintiff, Brandi A. Horn, filed an application for Title XVI supplemental security income on October 7, 2020. (Tr. at 14). In the application, Ms. Horn alleged

disability beginning on October 23, 2012.[1] *Id*. The application was denied initially and upon reconsideration. *Id*. After conducting a hearing on December 1, 2022, an Administrative Law Judge ("ALJ") denied Ms. Horn's application. (Tr. at 14-27). The Appeals Council denied Ms. Horn's request for review of the hearing decision, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1-6). Ms. Horn has requested judicial review.

For the reasons stated below, this Court should affirm the ALJ's decision and enter judgment for Defendant.

## II.   The Commissioner's Decision:

The ALJ found that Ms. Horn had not engaged in substantial gainful activity since the application date of October 7, 2020.[2] (Tr. at 16). At Step Two, the ALJ found that Ms. Horn had the following severe impairments: Achilles tendon

---

[1] Ms. Horn's prior application for benefits was denied by the ALJ and then the Appeals Council in 2020. (Tr. at 72-101). Ms. Horn subsequently filed the instant application.

[2] For Title XVI claims, the relevant time-period for determination of eligibility for benefits begins on the application date. (Tr. at 14-16); 20 C.F.R. § 416.971 *et seq*.

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

disorder, left calcaneal exostosis, tarsal tunnel syndrome, degenerative disc disease, plantar fasciitis, osteoarthritis of the bilateral knees, syncope, PTSD, depression, and anxiety. *Id*.

After finding that Ms. Horn's impairments did not meet or equal a Listed Impairment,[3] the ALJ determined that Ms. Horn had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with the following additional limitations: (1) she can no more than occasionally stoop, kneel, crouch, crawl, and balance; (2) she can no more than occasionally climb stairs and ramps; (3) she can never climb ropes, ladders, and scaffolds; (4) she is limited to no more than occasional exposure to extreme cold, vibration, or sunlight; (5) she is limited to no more than frequent, but not constant, reaching and handling of the right upper extremity; (6) she is limited to no hazards such as unprotected heights or dangerous moving mechanical parts; (7) she cannot drive or operate heavy industrial equipment (8) she can understand and remember simple instructions; (9) she can sustain attention and concentration to complete simple tasks with customary workplace breaks; (10) she can interact as needed with supervisors and coworkers and only occasionally with the general public; and (11) she can tolerate occasional changes in a routine work setting. (Tr. at 16-19).

---

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

Ms. Horn has no past relevant work. (Tr. at 24). At Step Five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Horn's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, such as table worker, document specialist, and addresser. (Tr. at 25-26). Thus, the ALJ found that Ms. Horn was not disabled. *Id*.

## III.  <u>Discussion</u>:

### A.  **Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

4

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

## B.   Ms. Horn's Arguments on Appeal

Ms. Horn contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) she cannot work because she would have to call in sick two times a month or be twenty percent off task for three days per month, and that the ALJ did not account for this; (2) the ALJ failed to properly consider medical evidence from treating providers; and (3) the hypothetical

posed by the ALJ at Step Five did not fully incorporate Ms. Horn's credible limitations.

The ALJ thoroughly discussed Ms. Horn's medical conditions, as follows: She suffered a brain injury that caused headaches, seizures, memory loss, and brain fog, among other things. Consultative examiner Vicki Caspall, Ph.D, saw Ms. Horn in January, 2021, and she reported that although Ms. Horn had a mildly depressed mood, she was fully alert and oriented, she could sustain attention, her speech and though process were normal, she moved from one topic to another with ease, and there were no signs of abstract reasoning difficulties. (Tr. at 23, 812-814). Cranial exams, a brain CT, and an EEG were all normal. *Id*.; (Tr. at 1025-1026, 1035). No doctor placed Ms. Horn on seizure precautions. Although Ms. Horn complained of disabling PTSD, anxiety, and depression, she did not require aggressive treatment for any mental condition and needed no inpatient hospitalization. Moreover, she said that therapy and medications were helpful.[4]  (Tr. at 23, 771-796). While Ms. Horn testified at the hearing that she was very limited in the ability to perform daily activities, she also admitted that she could help take care of her grandchildren,

---

[4] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

prepare meals, do chores, talk on the phone, and text.[5] (Tr. at 18-23, 47-57, 350-353).

Ms. Horn reported that she fell frequently due to left leg neuropathy and dizziness, and she said that she needed a cane, but the record showed she was able to ambulate without an assistive device. (Tr. at 21-22, 900-901, 1004, 1014-1025, 1035, 1090, 1170). Additionally, objective testing revealed degenerative disc disease in Ms. Horn's back, and she had positive straight-leg raise, which explained her allegations of back and leg pain. (Tr. at 1016-1020). Ms. Horn also tore her Achilles tendon, and it was repaired with no subsequent complications. (Tr. at 19, 689-695). Imaging showed proper healing and post-surgery, Ms. Horn said that she was doing well. *Id*. Due to left knee pain, Ms. Horn had steroid injections; she indicated great improvement after the injections.[6] (Tr. at 23, 2283). She did not require more than conservative treatment for any of her pain.

A consultative examiner placed moderate-to-severe restrictions on Ms. Horn for walking, climbing, lifting, and driving or operating machinery. (Tr. at 1016-1020). Non-examining medical experts at the initial and reconsideration levels of

---

[5] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[6] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

review found fewer limitations; they opined that Ms. Horn could perform light exertional work with no postural restrictions. (Tr. at 105-126). The ALJ weighed these opinions, but he placed significant restrictions on Ms. Horn in the RFC. (Tr. at 18). The RFC limited Ms. Horn to sedentary work (a more restrictive level than the light work that was suggested by the non-examining medical experts), with no driving, and no exposure to unprotected heights, dangerous moving mechanical parts, or heavy industrial equipment. (Tr. at 18, 24). Due to Ms. Horn's allegations of compromising pain, the ALJ placed numerous postural limitations on Ms. Horn as well, indicating he found the opinion of the consultative examiner partially persuasive. (Tr. at 24).

### i) Argument that Ms. Horn would be unable to work because she would miss work and be off-task

Ms. Horn alleges she could not work because she would have to call in sick two times per month and be twenty percent off-task three times per month. She states that the ALJ should have included these restrictions in the RFC. At Step Five of the required analysis, the ALJ asked the VE if a person could work with those particular restrictions and the VE said no.[7] (Tr. at 65-68). The ALJ properly declined to

---

[7] After determining that a claimant cannot perform past relevant work at Step Four, the burden shifts to the Commissioner to prove that other jobs exist which the claimant can perform. See *Nunn v. Heckler*, 732 F.2d 645, 649 (8th Cir. 1984). The Commissioner (ALJ) may meet his

include these restrictions in the RFC, because the record did not support such restrictions.[8] Ms. Horn's attorney cites to multiple diagnoses made by Ms. Horn's medical doctors, but a diagnosis alone does not infer disability.[9] (Doc. No. 8 at 5-7). And mentally, Ms. Horn was able to do daily activities that undermine her argument that she would miss work or be off-task. Moreover, mental status exams were generally normal, expect for some depression, PTSD, and memory issues. Likewise, Dr. Caspall opined that Ms. Horn would be capable of performing basic mental functions. (Tr. at 810-819). And the ALJ *did* limit Ms. Horn to simple, unskilled work (Tr. at 18-19, 25), showing he gave credit to some of her mental limitations.[10] Ms. Horn's first point of appeal fails, because she has not demonstrated that absenteeism or being off-task should have been included in the

burden at Step Five by eliciting testimony by a VE in response to "a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997).

[8] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

[9] See *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (a diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity).

[10] See 20 C.F.R. §§ 404.1568(a), 416.968(b) SSR 83-10 (unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time").

RFC.

### ii)   Argument that the ALJ did not properly consider evidence from Ms. Horn's treating providers

Ms. Horn alleges that clinic notes or summaries from ten of her treating providers were entitled to greater consideration by the ALJ. She construes this evidence as medical opinion evidence, and she says that the evidence shows she cannot work.[11] But medical opinions require judgments about what a claimant can do functionally in a work setting; they are RFC assessments subject to specific regulatory review requirements. 20 C.F.R. § 416.913(a)(2), (3). The informal clinic notes from the ten providers (including a letter from a nurse friend of Ms. Horn) did not offer specific RFC assessments or cite to specific functional limitations. (Tr. at 40, 501-503, 729, 825, 898-901, 938, 1000-1020, 1178-1183). They were more in the form of notes or narratives. For this reason, the ALJ was not required to consider them under the medical opinion analysis framework. The ALJ properly considered

---

[11] ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id.*

all of the medical evidence.

### iii)     Argument that the hypotheticals posed to the VE did not incorporate all of Ms. Horn's limitations

Finally, Ms. Horn reiterates her argument that the ALJ erred at Step Five, by not including certain limitations in the hypotheticals he posed to the VE. Ms. Horn states that she needed to use a cane due to frequent falling, needed to use the restroom frequently, and had disabling limitations from anxiety and panic attacks. However, as stated above, the evidence does not show that a cane was required for any extended period, and Ms. Horn ambulated without assistance at numerous medical visits. (Tr. at 900, 1090, 1170, 1183). Next, Ms. Horn claims that nausea, urinary leakage, and vomiting would require frequent restroom breaks in a work setting, but again, she has not proven that she has functional restrictions based on these things, and there is no evidence showing that these problems are disabling. In fact, Ms. Horn's attorney cites to no evidence in the record in support of this contention.[12] Finally, Ms. Horn has not shown that anxiety or panic attacks were disabling. She performed well at her consultative mental exam and could do a variety of daily activities, in spite of alleged panic attacks and anxiety. Also, Ms. Horn said that

---

[12] The claimant bears the burden of proving disability and providing medical evidence in support. See *Kamann v. Colvin,* 721 F.3d 945, 950 (8ᵗʰ Cir. 2013).

therapy and medication were helpful for her mental impairments. And the ALJ accounted for credible mental limitations in the RFC when he limited Ms. Horn to simple, unskilled work. The ALJ did not err at Step Five.

## III.  **Conclusion**:

There is substantial evidence to support the Commissioner's decision that Ms. Horn was not disabled. The ALJ did not err at Step Five and he properly considered the medical evidence. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 8th day of July, 2024.

_____
UNITED STATES MAGISTRATE JUDGE